IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DAVID MICHAEL RIFFEY
and BEREN RIFFEY                                                          PLAINTIFFS

VS.                                    3:12-CV-00294-BRW

CRST EXPEDITED, INC. F/K/A
CRST VAN EXPEDITED, INC., *et. al*                                        DEFENDANTS

<u>ORDER</u>

Pending is Separate Defendant CRST International's Motion to Dismiss (Doc. No. 52),

which will be treated as a motion for summary judgment,[1] and a Motion for Summary Judgment

(Doc. No. 59) filed by all Defendants.  Plaintiffs have responded and Defendants have replied.[2]

For reasons set out below, the Motions are GRANTED.

I.      **BACKGROUND**[3]

Q       This case arose out of a collision between two tractor-trailers. On February 10, 2011,

Mario Becerra rear-ended Plaintiffs' tractor-trailer on Interstate 40 near Shearerville, Arkansas.

Plaintiffs sued Becerra individually for negligence.  Plaintiffs also sued Becerra's alleged

employers -- CRST Expedited and CRST International (the parent company and sole owner of

---

[1]The parties were advised by letter order that the Motion to Dismiss would be treated as one for summary judgment because both parties submitted extrinsic materials with their pleadings, and because the discovery deadline had passed.  *See* Doc. No. 68.  The parties were given an additional week to supplement their pleadings, which they did.  *See* Doc Nos. 72, 76, 78, and 79.

[2]Doc. Nos. 65, 72, 74, and 78-80.  I note that Plaintiffs' Responses requested that I defer ruling on the Motions until additional discovery was completed.  However, Plaintiffs withdrew their request during an on-the-record telephone conference regarding a separate motion.  *See* Doc. No. 84.

[3]Unless noted otherwise, the facts in this section are taken from Plaintiffs' Amended Complaint.  *See* Doc. No. 10.

Expedited) (collectively, the "CRST Defendants").[4]  Plaintiffs assert that the CRST Defendants

are vicariously liable for Becerra's negligence, and directly liable for their own negligence.

Plaintiffs seek compensatory and punitive damages from all Defendants under their vicarious

and direct-liability claims.

Defendants seek summary judgment on Plaintiffs' punitive-damages claims and, if

granted, Expedited request summary judgment on the direct claims against it.[5]  International,

however, seeks summary judgment on all claims against it.[6]

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[7]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[8]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should be granted only when the movant has established a right to the

judgment beyond controversy.[9]  Nevertheless, summary judgment promotes judicial economy by

---

[4]Plaintiffs initially named CRST Logistics as a defendant.  CRST Logistics joined in the
Motions; however, during an on-the-record telephone conference with the parties, Plaintiffs
voluntarily dismissed CRST Logistics.  *See* Doc. No. 84.

[5]Doc. No. 59.

[6]Doc. No. 52.

[7]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[9]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

preventing trial when no genuine issue of fact remains.[10]  I must view the facts in the light most

favorable to the party opposing the motion.[11]  The Eighth Circuit has also set out the burden of

the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine
> dispute on a material fact.  It is enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged, and, if the record
> in fact bears out the claim that no genuine dispute exists on any material fact, it is
> then the respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue.  If the respondent fails to carry
> that burden, summary judgment should be granted.[12]

Only disputes over facts that may affect the outcome of the suit under governing law will

properly preclude the entry of summary judgment.[13]

## III.   DISCUSSION

### A.     Punitive Damages

#### 1.      Legal Standard

Punitive damages are not favored under Arkansas law.[14]  The Arkansas General

Assembly has delineated that punitive damages are warranted only when malicious conduct, or

reckless conduct from which malice can be inferred, causes another's injury.[15]  Malice, Arkansas

---

[10]*Id.* at 728.

[11]*Id.* at 727-28.

[12]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[13]*Anderson*, 477 U.S. at 248.

[14]*Morris v. Un. Pac. R.R.*, 373 F.3d 896, 903 (8th Cir. 2004) (quoting *In re Aircraft Accident at Little Rock*, 351 F.3d at 876).

[15]Ark. Code Ann. § 16-55-206.

courts have said, is "an intent and disposition to do a wrongful act greatly injurious to another."[16]
In other words, punitive damages are warranted only when the party who caused the injury knew
her or his actions were about to cause another's injury, but ignored that knowledge and took the
action anyway.[17]  The knowledge required may be actual or implied (*i.e.*, inferred from the facts
and circumstances).[18]

To get a claim for punitive damages to the jury, the injured party must set forth
substantial evidence that the party who caused the injury knew her or his conduct was about to
cause another's injury, but ignored that knowledge and took the action anyway.[19]  Generally,
Arkansas courts have awarded punitive damages in automobile-accident cases only in those
where the driver was drinking, drunk, doing drugs, or racing.[20]  But, as the Arkansas Supreme
Court recently noted, punitive damages must be determined on a case-by-case basis.[21]

### 2.    Becerra's Conduct

On February 10, 2011, Plaintiffs were traveling east on Interstate 40.  Behind them,
heading east out of Fontana, California, were Becerra and his co-driver.  According to Becerra's
deposition testimony, which Plaintiffs have failed to dispute, the two had been driving in snow
since Oklahoma (about three or four hours).  Becerra says that he been driving since, at least,

---

[16]See *Yeakley v. Doss*, 370 Ark. 122, 128 (2007).

[17]*D'Arbone Const. Co., Inc. v. Foster*, 354 Ark. 304, 308 (2003).

[18]*Id.* at 308-09.

[19]*Carpenter v. Auto. Club Interinsurance Exch.*, 58 F.3d 1296, 1304 (8th Cir. 1995)
(citations omitted).

[20]See *McLane v. Rich Transp., Inc.*, No. 2:11-CV-00101-KGB, 2012 WL 3257658, *5
(E.D. Ark. Aug. 9, 2012) (citing *Nat'l Bank of Commerce v. McNeill Trucking Co., Inc.*, 309
Ark. 80, 88 (1992)).

[21]*D'Arbone*, 354 Ark. at 309.

Morrilton, Arkansas, and had passed several vehicles on the side of the road that had been in accidents.[22]  He was free to stop at any point, and a safety department in Cedar Rapids, Iowa, who monitors weather and road conditions, could have ordered drivers (like Becerra) to pull off the road if conditions became too hazardous.[23]  Becerra says he also could have put snow-chains on his rig, which would have given it more traction, but did not feel it was needed.[24]

So, at 20 mph under the posted speed limit, Becerra kept on trucking.[25]  He was eastbound on I-40 near Shearerville, Arkansas, when, coming out of a curve, he saw Plaintiffs' tractor-trailer in front of him for the first time.[26]  He tried avoiding it, but an ice-patch kept his tires from getting traction, and Becerra rear-ended Plaintiffs' tractor-trailer.[27]

Plaintiffs allege that Becerra was driving too fast and following Plaintiffs' tractor-trailer too closely on the icy road, which caused him to collide with their tractor-trailer.  Becerra admits he was at fault in the accident.[28]  Plaintiffs argue that his conduct entitles them to an award of punitive damages against all Defendants -- or, at least to introduce evidence of such.

Defendants have moved for summary judgment on the punitive-damages claims, so Plaintiffs must show that there is a genuine dispute on the facts underlying the claim.  In other words, Plaintiffs must show Becerra either intended to harm them, or knowing his actions would

---

[22]Doc. No. 75-1.

[23]Doc. Nos. 79-1; 79-2; 79-4.

[24]Doc. No. 75-1.

[25]Doc. Nos. 75, 75-1.

[26]The posted speed limit for trucks was 65 mph -- Becerra told a patrolmen that he was traveling at about 45mph just before the wreck.

[27]Doc. No. 75-1.

[28]*Id.*

probably harm them, maliciously ignored that risk and acted anyway.  Plaintiffs have fallen short.

There does not seem to be much, if any, dispute over whether Becerra knew the roads were icy and slick just before the collision.  Plaintiffs assert that Becerra knew that continuing to drive with the road-conditions as they were, having seen several other vehicles involved in accidents, would likely cause an accident, but Becerra disregarded that risk and continued to drive and follow too closely.  Becerra asserts that he did not think he needed to stop, or to put snow-chains on.  In hindsight (being, as it is, 20/20), it is easy to think he should have known that he might wreck if he kept driving.  However, Plaintiffs have failed to set out facts sufficient to show that Becerra knew, or should have known, that his conduct would naturally and probably result in injury to others.  It is interesting to note that Plaintiffs themselves were on the road at a time they claim Becerra should not have been.

I cannot find that, under these facts, a reasonable jury could find that Becerra maliciously disregarded a known risk.  To hold otherwise would be to say that punitive damages are warranted anytime a vehicle on icy roads rear-ends another.  Accordingly, Plaintiffs punitive-damages claims are DISMISSED with prejudice.

### 3.    International and Expedited's Conduct

Plaintiffs allege that the CRST Defendants were negligent in hiring, training, retaining, and supervising Becerra, and in entrusting him with a tractor-trailer.  They contend that the CRST Defendants knew, or should have known, their negligence would result in Becerra injuring others, but continued their actions in disregard for the consequences, entitling Plaintiffs to an award of punitive damages.  The CRST Defendants argue that Plaintiffs have failed to produce evidence creating a genuine dispute as to any material facts supporting their punitive-damages claims, warranting summary judgment in their favor.  After reviewing the record, I am

satisfied that Plaintiffs have failed to produce sufficient evidence from which a jury could award punitive damages.

Becerra had a valid commercial driver's license, completed entry-level driver training as required by the Federal Motor Carrier Safety Regulations, and was "qualified" under the FMCS Regulations to drive a tractor-trailer.[29]  The FMCS Regulations set forth minimum qualification standards for commercial tractor-trailer drivers, and the records shows that Becerra met these qualifications.  Further, although Plaintiffs allege the CRST Defendants were careless in hiring drivers, carelessness does not amount to recklessness, and the record shows that the CRST Defendants' hiring practices, with respect to Becerra, squared with the mandatory hiring practices imposed by the FMCS Regulations.[30]

Plaintiffs also argue that the CRST Defendants were reckless in hiring Becerra because, at the time he applied, he had no experience driving a commercial tractor-trailer.  However, any connection between Plaintiffs' injuries and Becerra's experience at the time he was hired is too

---

[29]*See* Doc. Nos. 75-1, 75-3, 75-4; *see also* 49 C.F.R. § 391.11 ("A person is qualified to drive a motor vehicle if he/she -- (1) Is at least 21 years old; (2) Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records; (3) Can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he or she drives; (4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E--Physical Qualifications and Examinations of this part; (5) Has a currently valid commercial motor vehicle operator's license issued only by one state or jurisdiction; (6) Has prepared and furnished the motor carrier that employs him/her with the list of violations or the certificate as required by § 391.27; (7) Is not disqualified to drive a commercial motor vehicle under the rules in § 391.15; and (8) Has successfully completed a driver's road test and has been issued a certificate of driver's road test in accordance with § 391.31 or has presented an operator's license or a certificate of road test that the motor carrier that employs him/her has accepted as equivalent to a road test in accordance with § 391.33.").

[30]*See* Doc. Nos. 59-1, 59-4, 75-4; *see also* 49 C.F.R. §§ 391.21, 391.23, 391.35, 391.31, and 391.41 (To comply with the Regulations, an employer must: (1) obtain a completed application for employment; (2) conduct an investigation of driver's employment history for past 10 years and driving record for past three years; (3) administer a written examination; (4) administer a road test; and (5) obtain certification that driver is physically fit to drive.).

remote to support punitive damages -- at the time of the collision, Becerra had been driving a tractor-trailer for nearly three years.  Put differently, no reasonable jury could conclude that Plaintiffs' injuries resulted from hiring Becerra because, three years earlier, he had no experience.

As to Becerra's training, Plaintiffs' evidence also falls short of showing reckless or malicious conduct.  Albeit Becerra did state that he was unfamiliar with the FMCS Regulations, or that he should be, the record shows that he completed entry-level driver training and was provided with the materials required by the Regulations.[31]  Because of the training he was provided during orientation, Becerra was certified under the FMCS Regulations to operate a tractor-trailer.[32]  Moreover, Defendants also produced Becerra's signed statement, acknowledging that he was provided with a copy of the FMCS Regulations, which is required of employers by the Regulations.[33]  The record also shows that he completed a driving test administered by Expedited before he was hired -- this training consisted of the testing required by the FMCS Regulations.[34]  While Becerra may not have been familiar with the FMCS Regulations, nothing in the record shows that the CRST Defendants knowingly failed to train Becerra as required by the Regulations.  Thus, a jury could not conclude from the record before me that the CRST Defendants knew, or should have known, that Becerra's training would pose a danger to others, or naturally and probably result in injury to others.

---

[31]*See* Doc. No. 75-3; 49 C.F.R. §§ 380.501 through 380.513.

[32]Doc. No. 75-1.

[33]Doc. No. 75-3.

[34]*See* Doc. No. 59-1.

Plaintiffs rely heavily on Becerra's driving record and performance, arguing that they show that the CRST Defendants knew, or should have known, that Becerra's driving would likely injure others.  Other Arkansas courts have dealt with punitive-damages claims against employers of tractor-trailer drivers that were based on the driver's record and performance, and their decisions convince me that Becerra's record and performance are insufficient evidence of punitive damages.

In *Elrod v. G & R Const. Co.*, the Arkansas Supreme Court affirmed the dismissal of a punitive-damages claim against an employer, holding that the employer was not reckless in employing a tractor-trailer driver who had been involved in six motor vehicle accidents (two of which resulted in personal injury) and had twice been cited for failing to yield and unsafe driving.[35]  The court stated:

> Even in light of [the employee's] bad driving record, we can only surmise that in some of those instances, he may have negligently operated his motor vehicle.  There is nothing in the record or in the offer of proof consisting of [the employee's] prior bad driving record which would have put the employer on notice or conceivably enabled the employer to foresee that [its employee] would commit a willful and wanton act or possibly an intentional act.[36]

In *Wheeler v Carlton*, Judge Eisle found that an employer could not be liable for punitive damages for hiring and retaining a tractor-trailer driver who, in the six years before the collision at issue, received seven speeding citations (one as severe as 93 mph in a 60 mph zone); one for violating lane-usage laws; two for failing to stop at a stop sign; and one for following too closely.[37]  Furthermore, the driver received most of the citations while driving a commercial vehicle; twice his employer reported that he had struck a fixed object; and, at one point, his

---

[35]275 Ark. 151 (1982).

[36]*Id.* at 155.

[37]No. 3:06-CV-00068-GTE, 2007 WL 30261 (E.D. Ark. Jan. 4, 2007).

license had been revoked four months.[38]  Even so, Judge Eisle found that "no reasonable jury

could find that [the employer] knew, or ought to have known, in light of the surrounding

circumstances, that its conduct would naturally and probably result in injury and that it continued

such conduct in reckless disregard of the circumstances from which malice may be inferred."[39]

Similarly, in *Perry v. Stevens Transport, Inc.*, Judge Holmes dismissed punitive-damages

claims against a tractor-trailer driver's employer for negligent hiring, training, supervision, and

retention, finding that the driver's driving record -- which "consisted of striking a curb (twice),

scraping another vehicle (thrice), and exceeding the speed limit by ten miles per hour (once)" --

could not support an award of punitive damages.[40]

Likewise, Becerra's driving record is insufficient to support an award of punitive

damages.  Until Becerra rear-ended Plaintiffs, his driving had never caused personal injury to

others.  He has never been cited for reckless driving or declared to be "out of service" within the

meaning of the FMCS Regulations.  Although Becerra had twice been convicted of driving under

the influence before he was hired, his latest conviction was in 2002 -- six years before the

collision and nine years before he was hired.  In sum, no jury could conclude that, based on

Becerra's driving record, the CRST Defendants knew, or should have known, that his driving

would naturally and probably result in injury to others.

The same holds true as for Becerra's performance while employed with the CRST

Defendants.  Plaintiffs allege that the CRST Defendants knew, or should have known, that his

driving would cause injury to others because: he was cited for speeding twice and failed to report

---

[38]*Id.* at *9-11.

[39]*Id.* at *11.

[40]No. 3:11-CV-00048-JLH, 2012 WL 2805026 (E.D. Ark. July 9, 2012).

one citation within 24 hours as required by company policy; he struck a fixed object with his tractor-trailer; and he submitted 55 inaccurate driving logs during the month preceding the collision.  The CRST Defendants argue that he was cited once for speeding.  Assuming Plaintiffs are correct, the record is still insufficient to show that the CRST Defendants recklessly disregarded others safety by continuing to employ Becerra.  As noted above, Becerra was never cited for reckless driving or caused injury to others.  According to Becerra's testimony, which is undisputed, his rig struck the fixed object because he forgot to engage his parking brake while fueling and his truck rolled.[41]  As to Becerra's inaccurate logs, they may be considered as evidence of negligence because the FMCS Regulations require drivers to keep accurate hours-of-service logs.[42]  However, the Arkansas Supreme Court has held that violations of the FMCS Regulations do not support an award of punitive damages if there is no indication that they contributed to or caused the plaintiff's injuries.[43]  Here, nothing in the record suggests that Becerra's inaccurate logs contributed to or cause Plaintiffs' injuries.  Two Expedited employees testified that Becerra's inaccurate logs appear to mathematical errors or the result of sloppy handwriting -- not an attempt to hide hours-or-service violations -- and Plaintiffs have failed to dispute their testimony.[44]

Lastly, Plaintiffs point to a report by the FMCS Administration showing that Expedited drivers have a 92.8% unsafe driving record.  While this report, viewed in a light most favorably

---

[41]Doc. No. 75-1.

[42]See *Koch v. Northport Health Services of Arkansas, LLC*, 361 Ark. 192, 207-09 (2005).

[43]*Brumley v. Keech*, 2012 Ark. 263, at *5 (2012).

[44]*See* Doc. Nos. 59-6, 59-7.

to Plaintiffs, is evidence that the CRST Defendants knew that Expedited's drivers were unsafe. This, standing alone, cannot support an award of punitive damages for three reasons.

First, Plaintiffs have not shown that Becerra is one of the 92.8%; thus, the report does not indicate that Becerra was an unsafe driver or that the CRST Defendants knew he was an unsafe driver.  Second, a 92.8% unsafe driving record appears to carry little weight with the FMCS Administration in light of the fact that Expedited was given a "satisfactory" rating -- the Administration's highest career rating, which means that the records "indicate no evidence of substantial non-compliance with safety requirements."[45]

Third, the record shows that the CRST Defendants' approach to driver safety and supervision cannot be characterized as "conscious indifference" or "reckless disregard" to the safety of others.  Becerra's tractor-trailer was governed to 65 mph.[46]  Expedited requires its drivers to report moving violations within 24 hours, and drivers cited for speeding are either terminated or required to take a defensive driving course at the driver's expenses.[47]  Expedited also monitors their drivers' speed using an Engine Control Module report and a Risk Management Information System.[48]  The record also shows that drivers, including Becerra, are disciplined or counseled for speeding and submitted inaccurate hours-of-service logs.[49] Expedited also equips its trucks with an on-board communication system so it can notify its

---

[45]*See* U.S. Department of Transportation Federal Motor Carrier Safety Administration, Safety and Fitness Electronic Records System, http://www.safersys.org/saferhelp.aspx#SafetyRating (last visited Oct. 15, 2013).

[46]*See* Doc. No. 75-1.

[47]*See* Doc. Nos. 75-3, 59-2.

[48]*See* Doc. Nos. 75-3, 79-1.

[49]*See* Doc. Nos. 59-2, 59-6.

drivers of adverse weather,[50] which is not required by the FMCS Regulations, unlike employers in other federally-regulated transportation industries.[51]  In sum, the record does not show that the CRST Defendants were reckless in supervising Becerra.

### B.    Direct Claims Against Expedited

 Since Expedited is entitled to summary judgment on Plaintiffs' punitive-damages claims and it has admitted vicarious liability, Expedited is entitled to summary judgment on Plaintiffs' direct claims for negligent hiring, training, retention, and entrustment.[52]

### C.    Claims Against International

#### 1.    Vicarious Liability Claim

Under Arkansas law, an employer may be held vicariously liable for the tortious conduct of an employee under the doctrine of *respondeat superior* if the employee's tortious conduct was committed within the scope of an agency relationship.[53]  The party asserting that an agency

---

[50]*See* Doc. No. 79-1.

[51]*See e.g.*, 14 C.F.R. § 91.103 (Aviation); 46 C.F.R. § 45.191 (Boating); and 49 C.F.R. § 228.17 (Railroad).

[52]See *Elrod v. G & R Const. Co.*, 275 Ark. 151 (1982) (dismissing negligent entrustment claim where employer admitted vicarious liability); *Wheeler v. Carlton*, No. 3:06-CV-00068-GTE, 2007 WL 30261 (E.D. Ark. Jan. 4, 2007) (dismissing negligent hiring and retention claims where employer admitted vicarious liability and summary judgment had been granted on punitive damages claim); *Regions Bank v. White*, No. 4:06-CV-01475, 2009 WL 3148732 (E.D. Ark. Sept. 24, 2009) (dismissing negligent retention, hiring, and entrustment claims where employer admitted vicarious liability and there was no claim for punitive damages); *Perry*, 2012 WL 2805026 (dismissing negligent hiring, training, supervision or monitoring, and retention claims where employer admitted vicarious liability and summary judgment was granted on punitive damages claim).

[53]*Med. Assur. Co., Inc. v. Castro*, 2009 Ark. 93, at 7 (citing *Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533 (2006)).

relationship existed bears the burden of proving it.[54]  An agency relationship has two essential

elements:  (1) an agent who has authority to act for a principal and (2) a principal who has the

right to control the agent while the agent acts on the principal's behalf.[55]  The right of a principal

to control the agent is the most important factor in determining whether an agency relationship

exists -- however, it is the right of control, not the actual exercise of it, that counts.[56]

Plaintiffs assert that Expedited and International are vicariously liable for their injuries

under the doctrine of *respondeat superior* because both companies had the right and duty to

control Becerra.[57]  Expedited concedes that it was Becerra's employer and that he was acting

within his scope of employment at the time of the collision.[58]  International denies any vicarious

liability for Becerra.  In response, Plaintiffs argue that the companies are alter egos of one

another and, thus, both are employers of Becerra.  Plaintiffs allege that Expedited and

International's "businesses are so intertwined as to be indistinguishable," and that they "operated

their transportation business, where each business was a necessary part of the operation and

depended upon by the related entities for the operation."[59]

Under Arkansas law, a subsidiary and parent corporation's corporate identity will be

disregarded, and the two treated as one, only "'where fairness demands it,' such as when an

---

[54]*Taylor v. Gill*, 326 Ark. 1040, 1042 (1996) (quoting *Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195 (1994)).

[55]*Id.* at 1043 (quoting *Pledger*, 316 Ark. 195).

[56]*Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 322 (2000).

[57]Doc. No. 66.

[58]Doc. No. 60.

[59]Doc. No. 66.

individual has not respected the 'separateness of the corporate entity' or when the corporate form has been illegally abused to the detriment of a third party."[60]

Here, there are no facts that warrant disregarding Expedited and International's separate corporate identities.  Nothing in the record suggests that either company abused the corporate form to Plaintiffs' detriment.  International's Chief Financial Officer stated that both companies are fully capitalized and observe all corporate formalities; Expedited was Becerra's sole employer; International never employed or contracted with Becerra, and was not involved in recruiting, selecting, qualifying, retaining, training, or supervising Becerra; and International did not own Becerra's tractor-trailer or have part in its maintenance or inspection.[61]  Since Plaintiffs have failed to produce evidence disputing these statements, International cannot be held vicariously liable for Expedited's employee under an alter-ego theory.

Even so, International can still be liable as a separate and distinct corporate employer. Arkansas recognizes the joint-venture, borrowed-servant, and dual-employment doctrines.[62]  As with any vicarious-liability question, the determination turns on one party's right to control the other.

Plaintiffs contend that the deposition testimony of Charles Haffenden, International's Vice President of Safety, shows that International had the right to control Becerra.[63]  Haffenden stated that Expedited's directors and safety team report to him, and that he coordinates safety

---

[60]*Chism v. CNH Am., LLC*, 2:07-CV-00150-JLH, 2008 WL 495878, at *2 (E.D. Ark. Feb. 20, 2008) (quoting *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 935 (8th Cir. 1999)).

[61]Doc. No. 52-1.

[62]See *Nat'l Bank of Commerce v. HCA Health Servs. of Mw., Inc.*, 304 Ark. 55 (1990); *St. Joseph's Reg'l Health Ctr. v. Munos*, 326 Ark. 605 (1996); and *Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756 (1992).

[63]*See* Doc. No. 79-1.

policies and regulatory compliance between International and its five entities, including Expedited.[64]  He stated further that the safety department, which reports to him, monitors weather conditions across the United States, and has the ability to stop Expedited drivers when weather conditions are too hazardous using the on-board communications system in Expedited's tractor-trailers.  Haffenden also stated, however, that during Becerra's tenure with CRST, Expedited operated completely independently of International.[65]  Plaintiffs argue that, because International coordinated Expedited's policies after Becerra was terminated, it had the right to control Becerra, establishing an agency relationship between Becerra and International.[66]

I do not agree with Plaintiffs.  It is the right to control another's performance that establishes an agency relationship, not the right of a parent corporation to coordinate the internal, company-wide policies of the subsidiary that employs the "agent."  Here, the uncontested facts show that Becerra was subject solely to Expedited's control.  Becerra applied and then interviewed with Expedited at its terminal in Fontana, California.[67]  Josh Birr, an Expedited employee, stated that he received Becerra's application and made the decision to hire him.[68]  The record also shows that Daniel Jeffers and Alvin Hoggard, both Expedited employees, conducted Becerra's orientation and road test at the Fontana terminal, and Becerra's training certificate shows that Hoggard trained Becerra on the FMCS Regulations.[69]  Dale Stanek, Expedited's

---

[64]*Id.*

[65]*Id.*

[66]Doc. No. 79.

[67]Doc. Nos. 59-5, 75-1.

[68]Doc. No. 79-2.

[69]Doc. Nos. 59-1, 59-6, 66-2, 75-2, and 75-4.

safety supervisor, stated that he made the decision to terminate Becerra.[70]  Hoggard also stated

that he reviewed Becerra's driving logs and counseled Becerra after he received his speeding

citation.[71]  And, Expedited owned the tractor-trailer Becerra's was driving.

Plaintiffs have the burden of establishing an agency relationship between Becerra and

International, and from the record before me, I cannot find sufficient evidence supporting their

allegations.  Accordingly, International is entitled to summary judgment on Plaintiffs' vicarious

liability claim.

## 2.      Direct Claims

The theories of negligent hiring, training, retention, and supervision are separate and

distinct from the *respondeat-superior* theory of vicarious liability; however, liability is still

based on an employer-employee relationship.[72]  Since Plaintiffs have failed to show that

International was Becerra's employer, International is entitled to summary judgment on these

claims.

Likewise, Plaintiffs have failed to adduce facts showing that any acts or decisions by

International contributed to or caused Plaintiffs' injuries.  Accordingly, International is entitled

to summary judgment on Plaintiffs' direct-liability claims.

## <u>CONCLUSION</u>

Based on the above findings of fact and conclusions of law, Defendants' Motions for

Summary Judgment are GRANTED.  Accordingly, all of Plaintiffs' punitive-damages claims

---

[70]Doc. No. 76-5.

[71]Doc. Nos. 59-6, 75-2.

[72]See *Madden v. Aldrich*, 346 Ark. 405, 415 (2001); *Saine v. Comcast Cablevision of Arkansas, Inc.*, 354 Ark. 492 (2003).

and claims against International are DISMISSED with prejudice.  Plaintiffs' direct claims against Expedited are also DISMISSED with prejudice.

IT IS SO ORDERED this 20th day of December, 2013.


/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE